UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MORDECHAI GROSS,<br><br>           Plaintiff,<br>  v.<br><br>CARL "CHAIM" NEGER AND TUDOR CAPITAL GROUP LLC.,<br><br>           Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Mordechai Gross, ("Plaintiff" or "Gross"), by and through his attorneys, Garson Segal Steinmetz Fladgate LLP, as and for its complaint against defendants Carl "Chaim" Neger ("Neger") and Tudor Capital Group LLC ("Tudor") (collectively referred to herein as the "Defendants") respectfully alleges as follows:

### INTRODUCTION

1. This action asserts a racketeering conspiracy by Defendants to commit bank fraud by making unauthorized withdrawals of funds from Plaintiff's account, and harassing, defaming, slandering and utilizing falsehoods to pressure Plaintiff to acquiesce to these fraudulent withdrawals.

2. When Plaintiff objected to Defendants' fraudulent actions, Neger, in his individual capacity, retaliated against Gross by harassing and harming Gross and his business.

3. On these and related grounds, Plaintiff asserts claims under the federal Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961-1964, and state law claims for fraud, consumer fraud, invasion of privacy, and bank fraud, and seeks compensatory, treble and/or punitive damages, together with attorneys' fees and expenses.

## THE PARTIES

4. Plaintiff Mordechai Gross is an individual who resides in Ocean County, New Jersey. Plaintiff is an attorney admitted to the bar of the States of New Jersey and New York, but at all times during the events related to this action, was not acting within the scope of his legal profession.

5. Upon information and belief, Defendant Neger is an individual who resides in the Ocean County, New Jersey. Neger is the founding member of Tudor.

6. Upon information and belief, Defendant Tudor is a New York limited liability company with its principal place of business at 1430 Ocean Ave, Lakewood, New Jersey, 08701.

## JURISDICTION AND VENUE

7. This Court has jurisdictions over the claims pursuant to 18 U.S.C. §1965(a), as Plaintiff resides in this District.

8. Venue is proper in this District pursuant to 18 U.S.C. §1391(b)(1), as, upon information and belief, Defendant resides in this District.

## FACTS RELATED TO ALL CLAIMS

9. For several years leading up to the events giving rise to this Complaint, Plaintiff and Defendants conducted business together in various dealings.

10. In one such dealing in or around May 2019, Defendants did not want to lend money to a third-party entity called Cyntox LLC directly, so the Parties agreed that Neger would lend funds to Plaintiff, interest free, in his personal capacity, which Plaintiff would then, in turn, lend to Cyntox. For the arrangement, Defendant was paid a brokerage fee from Cyntox. Cyntox would then pay the principle and interest to Plaintiff directly.

11. On or about January 8, 2020, Plaintiff was seeking $180,000.00 in financing for the purchase of a vacation home (the "Property").

12. As a result of their prior dealings, Tudor and Neger agreed to loan Plaintiff the required $180,000.00 (the "Loan").

13. The Parties agreed that Plaintiff would receive $75,000.00 up front and the remaining $105,000.00 would be placed in escrow by Defendant and released upon closing on the Property.

14. The Loan was secured by a promissory note and structured as a Heter Iska.[1]

15. The terms of the Loan were plainly usurious on its face and made even more clear by Defendants' conduct.

16. The Loan required Plaintiff to, and Plaintiff did, pay an origination fee of $7,200.00 to Defendants and required monthly interest payments of $3,600.00.

17. On or about January 15, 2020, Plaintiff made an interest payment of $1,680.00 to Defendants.

18. On or about February 15, 2020, March 15, 2020, and April 15, 2020, Plaintiff made interest payments of $3,600.00 to Defendants.

19. In total, in only 4 months, Plaintiff paid Defendants $19,680.00 of interest on the $180,000.00 Loan, of which only $75,000 was actually made to Plaintiff.

20. The Loan stated that Plaintiff was to provide Defendants with one week notice of the closing, and the $105,000.00 allegedly being held in escrow would be released to Plaintiff to close on the Property.

---

[1] "A Heter Iska was a device developed in the 12th to 14th centuries to overcome the Biblical prohibition against charging interest by one Jew to another. It has been described as a loan structured in a certain way under Jewish law that allows interest." *Kirzner v. Plasticware, LLC*, 2015 WL 1723411 (N.Y. Sup. Kings Co.)

21. Plaintiff provided Defendants with notice on March 2, 2020 that he was ready to close on the property.  Therefore, the $105,000.00 should have been released by March 9, 2020.

22. Instead, on or about March 15, 2020, nearly two weeks later, Neger informed Gross that he was not ready to release the funds.

23. On or about March 18, 2020, Neger then told Plaintiff that he did not want to release the funds due to concerns regarding the ongoing COVID-19 pandemic.

24. It became apparent to Plaintiff that Defendants did not have the funds in escrow or otherwise set aside for Plaintiff, despite Plaintiff being duped into making full (and usurious) interest payments allegedly for the full $180,000.00.

25. Upon information and belief, Neger never set aside the $180,000.000 but nonetheless charged an interest rate in excess of 25% of the full $180,000.00 Loan.

26. In early May 2020, Plaintiff received $75,000.00 from the Cyntox Deal and contacted Neger, who informed Plaintiff by phone to keep the funds as part of the $105,000.00 still owed as part of the Loan.

27. This arrangement is reflected in a text communication between Neger and Gross dated May 13, 2020.

28. Even with the funds from the Cyntox deal, Neger provided Gross with only $150,000.00, not the agreed upon $180,000.00 required to close, and Plaintiff faced losing his down payment on the Property if he did not come up with the remaining $30,000.00.

29. Neger refused to provide the remaining $30,000.00, thus further breaching the agreement.

30. As a result, Plaintiff was forced to scramble to scrape together the remaining $30,000.00 from other sources, including by drawing from his retirement account and paying significant penalties thereupon.

31. After finally closing on the Property, Plaintiff contacted Defendants in May to inform them that because Defendants failed to honor their obligations and were not entitled to the interest payments, the various interest checks provided should not be cashed.

32. Neger then embarked on a retaliation campaign against Plaintiff which included bank fraud, invasion of privacy, slander and other malicious conduct.

33. On or about June 15, 2020, Plaintiff noticed an unauthorized charge on his account to "SELECT PORTFOLIO SPS" that was recorded on June 12, 2020.

34. Plaintiff contacted his bank and the unauthorized charge was credited back to his account.

35. Then again on or about June 18, 2020, another unauthorized charge was made by "SELECT PORTFOLIO."

36. Plaintiff again contacted his bank and was told that in order to stop the fraudulent and unauthorized charges, he would have to submit a stop payment to the bank.

37. Upon information and belief, "SELECT PORTFOLIO SPS" and "SELECT PORTFOLIO" are mortgage loan servicing companies used by Neger for his personal mortgage.

38. Upon information and belief, Neger fraudulently used the account information from the checks provided by Plaintiff in an attempt to pay his own personal mortgage from Plaintiff's account.

39. On or about August 18, 2020, Neger took out an advertisement in the publication Yated Ne'eman and Hamodia fraudulently listing Plaintiff's home for sale.

40. Plaintiff never put the home on the market nor expressed to Neger that it was for sale or that he wished Neger to take out the advertisement.

41. Without any legitimate reason for Neger to take out the advertisement, the only conclusion that can be drawn is that Neger's actions were done with the purpose of harassing Gross.

42. Additionally, Neger included Plaintiff's personal cell phone number in the listing without his express permission to do so.

43. By listing Plaintiff's unit and address in a public paper, along with his cell phone number, Neger intentionally caused Plaintiff an immense amount of emotional distress.

44. Plaintiff received several calls from neighbors and strangers interested in purchasing the home, and upon informing them it was not for sale, had to defend himself from ridicule and accusations, further causing Plaintiff emotional distress.

45. Neger also sought to cause harm to both Plaintiff's personal and professional reputation as an attorney by contacting Plaintiff's family, friends, and even his rabbi, accusing Gross of stealing funds from Neger, and numerous other allegations of fraudulent activity.

46. Finally, Neger filed a demonstratively false ethics complaint with the New Jersey bar against Plaintiff in an effort to bully Plaintiff into paying back the usurious loan.

## CLAIMS FOR RELIEF

### AS AND FOR A FIRST CAUSE OF ACTION
(Conduct and Participating in a RICO Enterprise through a Pattern of Racketeering Activity in violation of 18 U.S.C. § 1962(c))

47. The Plaintiff realleges and incorporates by reference, as if set forth fully herein, the allegations in paragraphs 1-46 above.

48. Defendants violated 18 U.S.C. § 1962 and Plaintiff was injured as a result.

49. Each Defendant is a "person," capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

50. Each Defendant violated 18 U.S.C. § 1961(c) by the acts described in the prior paragraphs, and as further described below.

51. The Enterprise. Defendants Tudor and Neger form an association-in-fact for the common and continuing purpose described herein and constitute an enterprise within the meaning

of 18 U.S.C. § 1961(4), and engage in the conduct of their affairs through a continuing pattern of racketeering activity, including usurious lending, bank fraud, harassment, and consumer fraud. There may be other members of the enterprise who are not known at this time.

52. <u>Pattern of Racketeering Activity</u>.  Defendants, each of whom are persons associated with, or employed by, the enterprise, did knowingly, willfully and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § l961(1), 1961(5), and l962(c), by persistently and repeatedly committing bank fraud, harassing Plaintiff, and attempting to bully Plaintiff into paying usurious interest rates on a loan never fully consummated. Defendants had the specific intent to engage in the substantive RICO violation alleged herein.

53. Defendants Tudor and Neger conducted and participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity that engages in, and the activities of which affect, interstate commerce through the fraudulent use of mortgage payment systems.

54. <u>Predicate Acts.</u> Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. § 1961(1)(B), and more specifically, bank fraud, harassment, and usurious lending. Defendants each committed at least two such acts or else aided and abetted such acts.

55. Defendants committed various indictable offenses under 18 U.S.C. §§1341 and 1343 in that they devised or intended to devise a scheme to defraud Plaintiff and obtain money from Plaintiff by means of false or fraudulent pretenses, representations or promises.  For the purposes of their scheme, Defendants first fraudulently represented that they would place loaned funds in escrow on behalf of Plaintiff in order to charge Plaintiff a usurious interest rate thereupon. Later, as the scheme began to unravel, Defendants' executed multiple false wire transfers by means of

bank fraud in an effort to withdraw funds directly from Plaintiff's account, using Plaintiff's bank account information acquired previously in the scheme, to pay Neger's personal mortgage. Finally, Defendants' harassed and harried Plaintiff through various means to procure more payments from him. These acts were done willfully and knowingly with the specific intent to advance Defendants' scheme.

56. The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims and method of commission. Further, the acts of racketeering by Defendants have been continuous and were performed across multiple states. There was repeated bank fraud during a period of time beginning in approximately March 2020 and continuing to the present, and there is a continued threat of repetition of such conduct.

57. Plaintiff, accordingly, seeks an award of three times the damages it sustained, and the recovery of reasonable attorneys' fees and costs incurred in the investigation and litigation, as well as any other relief as authorized by statute.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Consumer Fraud )

58. The Plaintiff realleges and incorporates by reference, as if set forth fully herein, the allegations in paragraphs 1-46 above.

59. Defendants unlawfully and wrongfully induced Plaintiff into relying on the Loan in order to purchase the Property without any intent or ability to place the $105,000.00 balance of the Loan in escrow for Plaintiff's use at closing.

60. Defendants unlawfully charged and accepted exorbitant and usurious interest payments for the entire amount of the Loan from Plaintiff without ever having loaned Plaintiff more than $75,000.00.

61. As a direct result of Defendants' conduct, Plaintiff suffered tens of thousands of dollars in losses, was forced to deplete his retirement, which came with additional fees and early withdrawal penalties, and various other losses as a result of the delays in closing on the property.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Common Law Invasion of Privacy – Intrusion of Solitude)

62. The Plaintiff realleges and incorporates by reference, as if set forth fully herein, the allegations in paragraphs 1-46 above.

63. By falsely publicizing Plaintiff's Property for sale and listing Plaintiff's private cell phone number in the publication, Defendants intruded on Plaintiff's solitude by placing both Plaintiff and Plaintiff's property into the public without Plaintiff's consent.

64. As a direct result of Defendants' conduct, Plaintiff was harassed and harried regarding the Property, and when he was forced to inform interested parties that the Property was not for sale, he faced ridicule, accusations, and reputational harm.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Common Law Invasion of Privacy – Appropriation of Image and Likeness)

65. The Plaintiff realleges and incorporates by reference, as if set forth fully herein, the allegations in paragraphs 1-46 above.

66. By falsely publicizing Plaintiff's Property for sale and listing Plaintiff's private cell phone number in the publication, Defendants wrongfully appropriated Plaintiff's name and likeness for their own benefit, namely to harass Plaintiff.

67. As a direct result of Defendants' conduct, Plaintiff was harassed and harried regarding the Property, and when he was forced to inform interested parties that the Property was not for sale, he faced ridicule, accusations, and reputational harm.

## **PRAYER FOR RELIEF**

**WHREFORE**, Plaintiff respectfully requests that the Court:

A. Award damages to Plaintiff in an amount to be determined at trial, but not less than One-hundred and eighty thousand dollars ($180,000.00);

B. Award reasonable costs and attorneys' fees to Plaintiff; and,

C. Grant any other relief that this Court deem just and proper.

Dated: New York, New York
October 29, 2020

Respectfully Submitted,

By: /s/ Michael Steinmetz
Michael Steinmetz (MS3164)
**GARSON, SÉGAL,
STEINMETZ, FLADGATE LLP**
164 West 25th Street, Suite 11R
New York, NY 10001
(P): (212) 380 - 3623
(F): (347) 537 - 4540
*Attorneys for Plaintiff*